Mark A. Neubauer (SBN 73728)
mneubauer@carltonfields.com
Scott L. Menger (SBN 305877)
smenger@carltonfields.com
CARLTON FIELDS, LLP
2029 Century Park East, Suite 1200
Los Angeles, CA 90067-2913
Telephone: (310) 843-6300
Facsimile: (310) 843-6301

Attorneys for Defendant California Cryobank LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SILVIA GARCIA,

Plaintiffs,

vs.

CALIFORNIA CRYOBANK LLC, a California entity, d/b/a WWW.CRYOBANK.COM,

Defendant.

Case No.: 2:25-cv-07897-FMO (RAOx)

Assigned to Hon. Fernando M. Olguin

**DEFENDANT CALIFORNIA CRYOBANK LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Request For Judicial Notice and Declaration of Scott L. Menger Filed Concurrently]

Date: October 30, 2025
Time: 10:00 a.m.
Courtroom: 6D
350 W. 1st Street
Los Angeles, CA 90012

Complaint filed: July 22, 2025
Pretrial Conference: Not Set
Trial Date: Not Set

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that, on October 30, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6D of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant California Cryobank LLC (erroneously sued as California Cryobank LLC, a California entity, d/b/a www.cryobank.com) will and hereby does move the Court for an order dismissing Plaintiff's Complaint with prejudice on the grounds that: pursuant to Federal Rule of Civil Procedure 12(b)(1), Plaintiff does not have Article III Standing because she does not allege any concrete injury for injury in fact; or, in the alternative, Plaintiff fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Defendant seeks an order dismissing the Complaint because Plaintiff does not allege any concrete injury. The Complaint should also be dismissed because Plaintiff fails to state causes of action for violation of the Wiretap Act, 18 U.S.C. § 2510 *et seq*., violation of California's Trap and Trace Law, Cal. Penal Code § 638.51, or a California Intrusion Upon Seclusion claim.

These Motions are based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities attached hereto, the Declaration of Scott L. Menger, Defendant's Request for Judicial Notice, the Complaint, all of the other pleadings and papers on file in this action, all matters which the Court may take judicial notice of, and such other and further oral or documentary evidence presented to the Court at or prior to the hearing on this Motion.

**This Motion is made following the conference of counsel under L.R. 7-3, which occurred on August 21, 2025.**

Dated: September 26, 2025

CARLTON FIELDS, LLP

By: /s/ Mark A. Neubauer
MARK A. NEUBAUER
Attorneys for Defendant CALIFORNIA CRYOBANK LLC

# TABLE OF CONTENTS


I. INTRODUCTION .......... 9

II. STATEMENT OF FACTS .......... 10

III. LEGAL STANDARDS .......... 12

A. Federal Rule of Civil Procedure 12(b)(1) .......... 12

B. Federal Rule of Civil Procedure 12(b)(6) .......... 13

IV. PLAINTIFF LACKS ARTICLE III STANDING .......... 13

V. THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA") DOES NOT APPLY TO SOFTWARE OR NONTELEPHONE DEVICES. .......... 15

A. The CIPA Trap and Trace Statute Does Not Apply to Computer Software. .......... 15

B. CIPA Applies Only to Telephonic Devices. .......... 17

C. The CCPA, Not CIPA, Governs Consumer Privacy on the Internet .......... 19

VI. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CALIFORNIA INTRUSION UPON SECLUSION COMMON COUNT .......... 20

A. Plaintiff Fails to Allege an Intrusion Upon Her Seclusion. .......... 21

B. Plaintiff Does Not Allege a Highly Offensive Intrusion. .......... 22

VII. PLAINTIFF'S FEDERAL WIRETAP ACT CLAIM FAILS TO PLEAD AN INTERCEPTION OF CONTENT BY A THIRD PARTY. .......... 24

A. Plaintiff Does Not Allege That Contents of Any Communications Were Involved. .......... 24

B. Plaintiff Does Not Allege Any Interception Took Place. .......... 26

VIII. CONCLUSION .......... 27

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 10, 13, 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 13

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 25

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........ 9, 10, 14, 15, 22

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ........ 26

*Deteresa v. Am. Broad. Companies, Inc.*,
121 F.3d 460 (9th Cir. 1997) ........ 10, 21

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ........ 21

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........ 26

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ........ 14, 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 26

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) ........ 14

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 24, 26, 27

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) ........ 22

*Mikulsky v. Noom, Inc.*,
682 F. Supp.3d 855 (S.D. Ca. 2023) ....................15

*U.S. ex rel. Modglin v. DJO Glob. Inc.*,
48 F. Supp. 3d 1362 (C.D. Cal. 2014) ....................11

*In re Nickelodeon Consumer Priv. Litig.*,
2014 WL 3012873 (D.N.J. July 2, 2014) ....................26

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ....................27

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................21

*Smith v. Maryland*,
442 U.S. 735 (1979) ....................18

*Spencer v. Kemna*,
523 U.S. 1 (1998) ....................13

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ....................12, 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................13, 14

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....................15

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................21, 27

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................26

*In re Zynga Priv. Litig.*,
750 F.3d at 1105 ....................25, 26

**California Cases**

*California Privacy Protection Agency v. Sup. Ct.*,
99 Cal. App. 5th 705 (2024) ....................20

*Day v. City of Fontana*,
25 Cal. 4th 268 (2001) ........ 15

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 18

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272, 211 P.3d 1063 (2009) ........ 23

*Hill v. National Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........ 23

*Mejia v. Reed*,
31 Cal. 4th 657 (2003) ........ 15

*People v. Evensen*,
4 Cal. App. 5th 1020 (2016) ........ 16

*People v. Larkin*,
194 Cal. App. 3d 650 (1987) ........ 18

*People v. Pryal*,
25 Cal. App 779 (1914) ........ 16

*People v. Trieber*,
28 Cal. 2d 657 (1947) ........ 16

**Federal Statutes**

18 U.S.C.
§ 2510 ........ 24, 26, 27
§ 2510(8) ........ 24
§ 2510 *et seq.* ........ 24, 26
§ 2511(1)(a) ........ 24
§ 2511(4) ........ 27
§ 2702(c)(6) ........ 24

Federal Rule of Civil Procedure 12(b)(1) ........ 12, 13

Federal Rule of Civil Procedure 12(b)(6) ........ 13

**California Statutes**

Cal Civ. Code
§ 1798.100 .......... 20
§ 1798.100(c) .......... 20

Cal. Code Civ. Proc.
§ 1859 .......... 20

Cal. Penal Code
§ 638.50(c) .......... 17
§§ 638.50 through 638.53 .......... 18
§ 638.51 .......... 9, 16, 19
§ 638.52 .......... 19
§ 638.52(d)(1), (3) .......... 19

California Consumer Privacy Act .......... 19, 20

California Invasion of Property Act .......... 15, 17, 19

**Other Authorities**

Assembly Bill 929 .......... 18

DEVICE, Black's Law Dictionary (12th ed. 2024) .......... 16

PROCESS, Black's Law Dictionary (12th ed. 2024) .......... 16

## I. INTRODUCTION

The question in this motion is whether Plaintiff, a self-proclaimed "tester" of websites for possible privacy violations, can use vague, conclusionary and boilerplate allegations to gain a foothold in Federal Court, even where she alleges contradictory allegations.

Fatal to the Complaint is the complete lack of any concrete injury, a necessary requirement for Article III standing. Mere assertion of a supposed statutory violation does not meet the standing requirement. Plaintiff does not allege that she became a victim of any fraud, cyberattack, or identity theft as the result of any dissemination of her alleged captured data.

As numerous courts have held, Plaintiff must show specific injury, including **specific** personal information that implicates a protectable privacy interest. Such a privacy concern is missing here, especially given the over 80 similar suits Plaintiff Sylvia Garcia has filed with the same lawyer, against multiple other business's websites, each claiming a similar privacy violation. See Request for Judicial Notice, Exhibit A.

A guiding light for considering whether these claims should be dismissed is Judge Blumenfeld of this Court's decision in *Byars v. Sterling Jewelers, Inc.,*2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023), where a similar volume "tester" plaintiff represented by the very same counsel as here was held to have failed to meet Article III standing and her complaint—as it should be here—was dismissed with prejudice. This Court held in *Byars* that, "Article III requires a concrete injury even in the context of a statutory violation." *Ibid* at 3. As in *Byars*, that concrete injury is lacking here.

But even if Plaintiff could claim that concrete injury, she still does not satisfy the statutory and common law requirements of her causes of action:

- Her claim of violation of the California Trap and Trace Law, Cal. Penal Code Section 638.51 fails, inter alia, because the very software

she claims stole her confidential information is not a "Trap and Trace" device and the statute is limited to telephonic devices, not internet communications;

- Plaintiff alleges on the one hand the software attacked did not capture the contents of communications and so meets the Trap and Trace statute, but at the same time alleges the software captured "communications" needed for her Federal Wiretap claim. Only one can be true and the inconsistency cancels the other claim out;
- Finally, her vague allegations about Intrusion Upon Seclusion ignores she voluntarily provided the information in question and, given her plethora of similar lawsuits against other websites and applying the pleading standards of *Ashcroft* and *Twombley*, Plaintiff simply could not have the required reasonable expectation of privacy in a matter whose violation is "highly offensive to a reasonable person." *Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 465 (9th Cir. 1997).

The statutes Plaintiff relies on are intended for specific purposes and real invasions of privacy, not the boilerplate conclusions Plaintiff hides behind here. Accordingly, this Court, as it did in *Byars,* should dismiss this lawsuit with prejudice.

## II. STATEMENT OF FACTS[1]

Plaintiff is a self-described "tester" who claims she works "to ensure that companies abide by the privacy obligations imposed by California law" Compl. ¶ 15. That explains why she has filed over 80 similar lawsuits in this and other California courts making similar claims. *See* Request for Judicial Notice, Ex. 1.

[1] The statement of facts are taken from the Complaint and are assumed true for purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). California Cryobank LLC is not waiving its rights to challenge the facts that Plaintiff alleges at the appropriate time.

Defendant, on the other hand, operates a website at www.cryobank.com, which is identified in the Complaint, Compl. ¶ 1, and is therefore incorporated by reference. For a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion" into a motion for summary judgment. *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1379 (C.D. Cal. 2014).

Although Plaintiff admits that Defendant is an "artificial insemination services provider", Plaintiff claims she visited Defendant's website "in the last year to investigate skin solutions[,]" Compl. ¶¶ 9, 15, an incorrect allegation that betrays Plaintiff's use of boilerplate, form allegations to pursue her many lawsuits. Although claiming she was looking for "skin solutions" that appear nowhere on Defendant's website, Plaintiff alleges that she is "genuinely interested in the goods, services, and information available on Defendant's Website" which are of course artificial semination services.

Plaintiff claims she "visited the Website in the last year…and was unaware of the secret spyware being used to surveil visitors and monetize their personal information." Compl. ¶ 15. Plaintiff's complaint asserts no specific acts by Defendant except that it supposedly "allows a notorious data broker to (1) intercept communications from visitors and (2) use those communications to compile and sell deeply personal details about visitors." Compl. ¶ 2. Plaintiff alleges that Defendant "installed on its Website a spyware pixel created called "Magnite" to identify Website visitors." Compl. ¶ 10. Allegedly, this results in "an intrusion upon visitor privacy involving highly personal skin and body issues." Compl. ¶ 2. How an inquiry into artificial insemination would trigger "highly personal skin and body issues" is never explained nor exists.

Plaintiff fails to plead any other facts about her alleged visit to Defendant's website. Indeed, Plaintiff alleges no specific date of the visit, no means by which

she accessed the website (e.g., using a computer, tablet, or cell phone), how she found or arrived at the website, what pages in the website that she visited, how long she spent on the website, whether she clicked on any links or interacted with the website's cookie bar, typed anything in the website's search bar, or any other facts about her interactions with the website.

Plaintiff alleges that the Magnite software is a "process" that captures "routing and addressing information." Compl. ¶ 20. According to Plaintiff, Magnite captures and transmits "the IP address of the originating device, device identifiers such as cookies, device IDs, or browser fingerprints, URL referrer paths, headers, session identifiers, and other dialing, routing, addressing, and signaling information that identifies the source of user's electronic communication." *Id.*

Although Magnite is not named as a defendant, Plaintiff alleges that Magnite then supposedly sells the data that it collects. Compl. ¶ 14. Although Plaintiff claims Magnite "collect[s] and transmit[s] information about a website visitor's communications." Compl. ¶ 17, Plaintiff fails to allege any specific "communications" or "contents of communications" that Magnite allegedly captured, much less sold.

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

To establish standing under Article III, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A plaintiff may not allege merely a "bare procedural violation, divorced from any concrete harm." *Id.* at 1549.

To show injury-in-fact, a plaintiff must show he or she suffered an "invasion of a legally protected interest" that is "concrete and particularized" as well as "actual or imminent"—as opposed to being conjectural or hypothetical. *Id.*

at 1548 (citation omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citation omitted).

When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), as it is here, the plaintiff has the burden of proving jurisdiction to survive the motion. This burden requires a plaintiff to "clearly . . . allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Spencer v. Kemna*, 523 U.S. 1, 11 (1998) (internal quotation marks omitted).

Plaintiff has not done that.

**B. Federal Rule of Civil Procedure 12(b)(6)**

To survive a FRCP Rule 12(b)(6) motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While "well-pleaded factual allegations" are accepted as true, a court should not credit either "a legal conclusion couched as a factual allegation," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. 544, 555 (internal citations omitted).

## IV. PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff alleges only that she suffered a statutory violation without any concrete injury, and "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id* at 426.

In other words, even if Plaintiff had shown a statutory violation (which she has not), the statutory violation alone does not give her standing. The Supreme

Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. at 426 (citing *Spokeo, Inc. v. Robins*, 578 U.S. at 341 (2016)).

Here, Plaintiff did not suffer any concrete injury. Although Plaintiff alleges that unspecified data was supposedly captured, she does not allege that due to any alleged capture of her personal information, she was contacted by any third parties by e-mail, phone, or text message; she received any target advertisements; nor she became a victim of any fraud, cyberattack, or identity theft as the result of any dissemination her alleged captured data. *See Khamooshi v. Politico LLC*, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) (plaintiff's IP addresses, "browser and device data," and "other identifying information" were "too vague to assert a protectable, privacy interest.").

As this Court held in *Byars v. Sterling Jewelers, Inc.*, for Plaintiff to have Article III standing, she must "identify any specific personal information she disclosed that implicates a protectable privacy interest." 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) Like the plaintiff in *Byars*, Plaintiff fails to make the required allegations here. She fails to allege any facts about her visit to the website: how she arrived at the website, how long she spent on the website, whether she clicked on any links in the website, whether she used any chat feature, or whether she used the search function.

Again, this Court earlier this year in *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025), found no concrete injury and no standing where plaintiff fails to allege

> "when and how many times she visited the site, what information she provided, what information Defendant captured, whether she was aware of Defendant's tracking practices, or if she has any reason to believe that she was indeed de-anonymized."

*Ibid*. The same lack of concrete injury here deprives Plaintiff of Article III standing.

Plaintiff's allegations that Magnite captured Plaintiff's "name, contact information, location data, browsing behavior, device fingerprints, and interests" is not private information that confers Article III standing. As the Supreme Court held in *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008), "Internet users have no expectation of privacy in the … IP addresses of the websites they visit."

Moreover, as the Court held in *Mikulsky v. Noom, Inc*., 682 F. Supp.3d 855 (S.D. Ca. 2023), in dismissing a similar lawsuit, providing to a website basic contact information, email address or telephone number, does not rise to harms giving standing in federal courts. 682 F. Supp.3d at 864.

Without the key Article III standing, this Complaint should be dismissed with prejudice for a lack of subject matter jurisdiction similar to what this Court found in *Byars, supra*. 2023 WL 2996686, at *4.

## V. THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA") DOES NOT APPLY TO SOFTWARE OR NONTELEPHONE DEVICES.

The Complaint's Second Cause of Action claims a violation of the California Invasion of Privacy Act ("CIPA") but the allegations do not support such a claim.

### A. The CIPA Trap and Trace Statute Does Not Apply to Computer Software.

No interpretation of CIPA classifies the Magnite computer software as a "trap and trace device." When interpreting a statute, the court must analyze the legislative intent and purpose of the statute and give words their usual and ordinary meaning. *Day v. City of Fontana*, 25 Cal. 4th 268, 272 (2001); *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003) ("[W]ell-established rules of statutory construction" require that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect.")).

Accordingly, both the Penal Code and Civil Code statutes must be "read together and harmonized if reasonably possible." *See People v. Pryal*, 25 Cal. App 779, 781 (1914); *accord*, *People v. Trieber*, 28 Cal. 2d 657, 661 (1947) ("Statutes are to be construed so as to harmonize with one another and it cannot be assumed that the Legislature refers in one section to an authorization that it declares punishable in another.") (internal citations omitted).

Under CIPA, a "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.51.

This definition does not include the Magnite software alleged in the Complaint. First, there is no indication that software is a "device or process."[2] Further, Plaintiff does not plead any fact about ***what*** "electronic or other impulses," the Magnite software captures.[3]

---

[2] The most applicable Black's Law Dictionary definition of "device" defines the word as "an apparatus or an article of manufacture." DEVICE, Black's Law Dictionary (12th ed. 2024). There is not a particularly applicable definition for "process" in this context, but charitably could be defined as "a method, operation, or series of actions intended to achieve some new and useful result by changing a material's chemical or physical characteristics." PROCESS, Black's Law Dictionary (12th ed. 2024).

[3] To the extent Plaintiff contends the electronic impulse captured is her IP address, that is not a violation of the law. "An IP address is a unique number identifying the location of an end-user's computer. When an end-user logs onto an Internet service provider, the user is assigned a unique IP number that will be used for that entire session. Only one computer can use a particular IP address at any specific date and time." *People v. Evensen*, 4 Cal. App. 5th 1020, 1022 n. 1 (2016) (internal citations and punctuation omitted).

Plaintiff pleads a total of just two allegations, both vague and conclusory, saying that Defendant captures "contents of communications" (Compl. ¶ 35) but in the next page, says there is not capture of the contents (Compl. ¶ 43). If these allegations met the pleading standard and are accepted as true, they would remove Plaintiff's claims from the purview of the California Trap and Trace Law which does not include the communications themselves.

Under the California Penal Code, a trap and trace device "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information…**but not** the contents of a communication." Cal. Penal Code § 638.50(c) (emphasis added).

**B. CIPA Applies Only to Telephonic Devices.**

CIPA applies to telephones – not computer software. CIPA was codified in 1967, about 10 years before the Internet was invented. CIPA was intended as follows:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques ***for the purposes of eavesdropping upon private communications*** and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society. The Legislature by this chapter intends to protect the right of privacy of the people of this state. The Legislature recognizes that law enforcement agencies have a legitimate need to employ modern listening devices and techniques in the investigation of criminal conduct and the apprehension of lawbreakers. Therefore, it is not the intent of the Legislature to place greater restraints on the use of listening devices

and techniques by law enforcement agencies than existed prior to the effective date of this chapter.

Cal. Penal Code § 630 (emphasis added.)

In 2002, the California Supreme Court confirmed that CIPA was enacted to "replac[e] prior laws that permitted the recording of telephone conversations with the consent of one party to the conversation." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002). Therefore, the purpose of the statue has not changed in almost 50 years, even after the Internet was invented.

Further, CIPA has been amended and modified several times to include new technologies – and it still does not include the internet (such that it does not apply to Plaintiff's Complaint). For example, Penal Code sections 638.50 through 638.53 were enacted in 2015, well after the Internet became ubiquitous. These sections were "intended to authorize state and local law enforcement to seek emergency orders for pen registers/trap and trace devices **used in telephone surveillance**." *See* Assembly Bill 929, Committee Report, 2015-2016 Legislative Session, June 15, 2015. Assembly Bill 929 also noted that "[h]istorically, 'pen registers' are used to record outgoing numbers from a particular **telephone line**, while 'trap and trace' devices allow them **to record the numbers that call in**." If the Legislature intended for a trap and trace device to include software, it would not have explicitly and solely discussed telephones.

Traditionally, a trap and trace device is a tangible, mechanical device. This basic fact is supported by Court decisions discussing what a pen register is, which is effectively the other side of the same coin as a trap and trace device. The United States Supreme Court and California appellate courts have both stated that a pen register is a mechanical device used to monitor telephones. *Smith v. Maryland*, 442 U.S. 735, 736 n. 1 (1979) ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *see also People v. Larkin*, 194 Cal.

App. 3d 650, 653 n. 2 (1987) ("A pen register is a mechanical device connected to a telephone number to monitor dialing activity.").

Further, Penal Code section 638.52 supports the conclusion that a trap and trace device is a tangible, mechanical device used only for telephone surveillance. Section 638.52 provides the authorized use of a pen register or trap and trace device. An officer seeking authorization to use this device must specify:

> (1) the identity, if known, of the person "in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached[;]" and
>
> (2) the "physical location of the telephone line to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order."

Cal. Penal Code § 638.52(d)(1), (3).

To meet the statute you need a physical device that is *attached* to a telephone line. The Magnite software is not a physical device, nor does it attach to a telephone line. And, if we were to assume *arguendo* that website software can be defined as a trap and trace device, it would be impossible for law enforcement to legally place a trap and trace device on a website, because it could never obtain a court order that complied with the above Penal Code § 638.52.

### C. **<u>The CCPA, Not CIPA, Governs Consumer Privacy on the Internet</u>**

Plaintiff's claims are brought under the wrong statute. Plaintiff's assertion that CIPA applies to the Magnite software is incorrect because it entirely ignores California's comprehensive consumer privacy laws enacted after CIPA – the California Consumer Privacy Act ("CCPA"). The CCPA was enacted in June 2018, three years after Penal Code § 638.51, and its purpose "was to protect consumers' privacy rights by providing them meaningful control over how their

personal information is collected, used, and disclosed by a covered business." *California Privacy Protection Agency v. Sup. Ct.*, 99 Cal. App. 5th 705, 712 (2024). Its provisions cover the same facts alleged here, detailing precisely the disclosure and consent requirements businesses must comply with to collect personal information from consumers. Cal Civ. Code § 1798.100.

CCPA provides consumers numerous rights and remedies to control their personal information, including: the right to know what information has been collected about them; the right to have that collected information deleted; the right to know whether their personal information has been sold or shared and to whom; and the right to opt-out of the sale or sharing of their personal information. *California Privacy Protection Agency*, 99 Cal. App. 5th at 713.

Plaintiff chose to exercise none of those rights, instead opting to attempt to criminalize the conduct the CCPA permits. *See* Cal Civ. Code § 1798.100(c); § 1798.105(a). But when "a general and particular provision [of a statute] are inconsistent, the latter is paramount to the former. So a particular intent will control one that is inconsistent with it." Civ. Proc. Code § 1859. The Court should accordingly find that the CCPA controls, and Plaintiff has failed to state a claim.

Moreover, the CCPA's mere existence is proof that CIPA does not apply to websites. As the CCPA is a later enacted statute, the Legislature is presumed to know the existence of CIPA and its scope. But the purpose and framework of CCPA become superfluous if Plaintiff's theory that a website cookie is an illegal trap and trace device is correct.

## VI. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CALIFORNIA INTRUSION UPON SECLUSION COMMON COUNT

The Complaint's Third Cause of Action, California's common law Intrusion Upon Seclusion" also fails to meet the high standards for invasion of privacy.

Plaintiff's allegations constitute nothing more than a routine and commonplace collection of information that are an integral part of using the

internet. Courts in applying an intrusion claim requires an "intentional[] intrusion, physically or otherwise, upon the solitude or seclusion of another or his private affairs …' in a manner "highly offensive to a reasonable person." *Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 465 (9th Cir. 1997); *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1216 (C.D. Cal. 2017).

As this Court noted in *Vizio,* "Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications." *Id.* at 1233. Yet, at most here was a routine collection.

**A. <u>Plaintiff Fails to Allege an Intrusion Upon Her Seclusion.</u>**

Plaintiff does not allege an intrusion upon her seclusion. First, Plaintiff's Complaint contains no facts whatsoever about any intrusion upon any seclusion, solitude, or private affair. Plaintiff only states legal conclusions that are "couched as factual allegation[s]." *Ashcroft v. Iqbal*, 556 U.S. at 678; Compl. ¶¶ 48, 49 ("Defendant intentionally intruded on the private affairs, concerns, and seclusion of Plaintiff by improperly accessing Plaintiff's personal information…").

Second, the information that Plaintiff alleges was captured: IP addresses, "device IDs, or browser fingerprints, URL referrer paths, headers, and session identifiers" (Compl. ¶ 20) is <u>not</u> private information capable of intrusion; *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (granting motion to dismiss intrusion claim where defendant collected plaintiff's personal details, browsing history, and IP address); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (finding there was no "serious invasion of a protected privacy interest" where the software captured mouse clicks, keystrokes, payment card information, including card number, expiration date and CCV code, IP address, location at the time of the visit, browser type, and operating system).

Finally, Plaintiff was not secluded and did not consider herself secluded – to the contrary, Plaintiff could not be more open about her Internet behavior. Plaintiff

is a self-proclaimed "consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law." Compl. ¶ 15. Plaintiff does allege that she was secluded because she cannot – she knew and expected that she was being tracked.

Plaintiff tries to avoid the impact of her many lawsuits on alleged invasion of her privacy by referencing in Paragraph of her Complaint, *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023). But that case involved a serial plaintiff under the American with Disabilities Act. As this Court noted in *Byars,* by her volume of cases, Plaintiff actually was looking for features that would track her conversations rather than being surreptitiously surprised. As this Court noted in *Byars,*

> "Although the Court's analysis does not depend on Plaintiff's status as a tester, the undisputed fact that she filed numerous similar lawsuits before visiting Defendant's website casts doubt on any suggestion that she was surprised by surreptitious recording of her information. See *Byars v. Hot Topic, Inc*., No. 22-cv-1652-JGB, 2023 WL 2026994, at *4 (C.D. Cal. Feb. 14, 2023) ("Plaintiff [Byars], and her counsel, Scott Ferrell, are serial litigants bringing numerous 'cookie cutter' lawsuits under CIPA against various businesses that operate websites. To the contrary, it appears—and Plaintiff does not dispute—that Plaintiff visited Defendant's website looking for chat features that would track her conversations so that she could allege statutory violations."

2023 WL 2996686, at fn. 4.

**B. <u>Plaintiff Does Not Allege a Highly Offensive Intrusion.</u>**

To allege that Defendant's conduct is highly offensive, Plaintiff alleges that the conduct constitutes a "bait and switch." Compl. ¶ 1. That bait and switch is that "Defendant explicitly promised to protect Plaintiff's privacy" by stating "your privacy is our top concern" (Compl. ¶¶ 1, 24), but then collected the data in secret.

However, Plaintiff cites the Privacy Policy linked on the website, and that privacy policy actually tells visitors that Defendant does collect data and exactly what data is collected. *See* Request for Judicial Notice. Therefore, there is no "bait and switch" and there is no "highly offensive" intrusion.

To state an intrusion upon seclusion claim, "Plaintiffs must show more than an intrusion upon reasonable privacy expectations. Actionable invasions of privacy must be 'highly offensive' to a reasonable person, and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms.'" *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295, 211 P.3d 1063, 1078 (2009).

In determining the "offensiveness" of an invasion, courts take a holistic approach and consider factors like, the "likelihood of serious harm" to the victim, "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1, 25-26 (1994); *Hernandez*, 47 Cal. 4th at 295. Further, looking to policy guidance, the California Supreme Court noted that "[n]o community could function if every intrusion into the realm of private action gave rise to a viable claim." *Hernandez*, 47 Cal. 4th at 295 (internal citations omitted).

Plaintiff alleges that data about her Internet usage was collected by a "data broker [that is] registered with the State of California Department of Justice." Compl. ¶ 14. Data was collected "for advertising to consumers across devices" and used to "develop a probability that different devices are shared by the same person"…to "show them similar ads on both devices." Compl. ¶¶ 11-12. This collection does not meet the standard for a highly offensive, sufficiently serious, egregious breach of social norms.

## VII. PLAINTIFF'S FEDERAL WIRETAP ACT CLAIM FAILS TO PLEAD AN INTERCEPTION OF CONTENT BY A THIRD PARTY.

Plaintiff fails to state a claim because the alleged use of tracking technology does not qualify as an "interception" of any "communication" within the meaning of the Wiretap Act, 18 U.S.C. § 2510 *et seq.* Under the Wiretap Act, it is an offense to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

As a preliminary matter, the Wiretap Act is not applicable to the alleged conduct, nor was it intended to regulate the alleged conduct. The Wiretap Act (codified as Title I of Electronic Communications Privacy Act ("ECPA")), was passed in 1986 – 38 years ago – "prior to the advent of the Internet and the World Wide Web…[and] [a]s a result, the existing statutory framework is ill-suited to address modern forms of communication like [a] website." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002). No amendment or modification to the ECPA made since 1986 has addressed the conduct alleged in the Complaint.

### A. Plaintiff Does Not Allege That Contents of Any Communications Were Involved.

Plaintiff does not state a claim under for any violation of the Wiretap Act because Plaintiff does not allege that "contents" of her "communications" are at issue. Compl. ¶¶ 35, 43. First, Plaintiff's states only two times in her Complaint that "contents of communications" were intercepted (*Id.*) – this is vague and conclusory and does not meet the pleading standard. Second, the facts that do exist in the Complaint (albeit still vague), constitute what is called "record information," distinct from "contents of communications." 18 U.S.C. § 2702(c)(6).

The "contents" of a communication are defined as "any information concerning the ***substance, purport, or meaning*** of that communication." 18 U.S.C.

§ 2510(8) (emphasis added); *Brodsky v. Apple, Inc*., 445 F. Supp. 3d 110 , 127 (N.D. Cal. 2020) (text messages qualify as "contents").

The Ninth Circuit interpreted this statute by first "look[ing] to the particular statutory language at issue, as well as the language and design of the statute as a whole." *In re Zynga Priv. Litig.*, 750 F.3d at 1105 (citing *K Mart Corp. v. Cartier*, Inc., 486 U.S. 281, 291 (1988). "Contents" are the "intended message to another (i.e., the "essential part" of the communication, the "meaning conveyed," and the "thing one intends to convey")." *Id.* at 1106.

Plaintiff states no facts whatsoever about any "substance," "meaning," or "intended message" that she conveyed while visiting on Defendant's website – either to Defendant, in any chat feature, in any e-mail or messaging feature, not in any search bar, in any survey or quiz – nothing.

Instead, Plaintiff's only factual allegations are that Defendant's third-party software captures "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106.

Plaintiff alleges that Magnite:

- "begins to collect information the moment a user lands on the Website before any pop-up or cookie banner advises users of the invasion or seeks their consent;"
- "requests and transmits other identifying personal information to Magnite that allows Magnite to link a users' behavior on Defendant's website to the visitor's social media accounts;"
- Plaintiff alleges that Magnite "collect[s] and transmit[s] information about a website visitor's communications;"
- "analyze[s] internet and device data;" and
- captures "the IP address of the originating device, device identifiers such as cookies, device IDs, or browser fingerprints, URL referrer paths,

> headers, session identifiers, and other dialing, routing, addressing, and signaling information that identifies the source of the user's electronic communication."

Compl. ¶¶ 11, 16, 17, 20.

This is all "record information." Courts do not consider "record information" to be "contents" that are required to state a Wiretap Act claim." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("record information regarding the characteristics of the message that is generated in the course of the communication" does not qualify as "contents"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) ("information about the identities of parties to a communication…is not 'content' as defined by the Wiretap Act"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1034 (N.D. Cal. 2014) ) ("name, address, email address or phone number" are not content); *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) ("IP addresses and URLs" are not content); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084-85 (N.D. Cal. 2018) (same); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023), affirmed as modified, 2025 WL 2250261 (3d Cir. Aug. 7, 2025) ("mouse movements and clicks, keystrokes, and URLs of web pages visited" do not state a Wiretap claim because they do not constitute contents of communications). Therefore, Plaintiff fails to state a claim for a violation of the Wiretap Act.

**B. <u>Plaintiff Does Not Allege Any Interception Took Place.</u>**

Plaintiff does not plead any facts sufficient to allege that an interception of any communication took place and therefore, does not state a claim under the Wiretap Act, 18 U.S.C. § 2510 *et seq*. For a communication "to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage." *Konop*, 302 F.3d at 878.

The Wiretap Act definition of "interception" is narrowly construed. *Konop*, 302 F.3d at 876. Interception means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device. 18 U.S.C. § 2511(4). Courts construing this provision consistently hold that interception only occurs where a third party captures information "contemporaneously" transmitted. *Konop*, 302 F.3d at 877.

Plaintiff fails to state that any communication was intercepted "contemporaneously" with transmission. "Plaintiffs must provide fair notice to Defendants of ***when*** they believe Vizio intercepts their communications." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (emphasis added) (dismissing plaintiff's claim for violation of the Wiretap Act because no interception was alleged).

In *In re Vizio*, plaintiffs alleged that "Vizio's Smart TVs use automatic content recognition software to collect and report consumers' content viewing histories." *In re Vizio, Inc.*, 238 F. Supp. 3d at 1212 (citing plaintiff's complaint). The software "transmits this information to Vizio's Inscape data services platform." *Id*. The court found that plaintiff's "conclusory allegation" that Vizio intercepted their communications "during transmission" and "in real time" failed to plead interception required by the Wiretap Act. *Id*. at 1228; *see also Rosenow v. Facebook, Inc*., 2020 WL 1984062, at *7-8 (S.D. Cal. Apr. 27, 2020) (dismissing Wiretap Act claim because conclusory allegation that communications were intercepted during transit failed to state a claim).

These missing allegations doom Plaintiff's Wiretap claim.

## VIII. CONCLUSION

Plaintiff has no Article III standing because she has no concrete injury. Plaintiff fails to state a claim under: (1) the Wiretap Act because there was no interception of contents of communications, (2) the California Trap and Trace Law because the law only applies to telephone conversations and not the Internet, and

(3) California Intrusion Upon Seclusion because she was not secluded when she was working as privacy tester.

But even if Plaintiff had satisfied these causes of action, as this Court held in Byars, without Article III standing, this action should be dismissed with prejudice.

Dated: September 26, 2025

CARLTON FIELDS, LLP

By: /s/ Mark A. Neubauer
MARK A. NEUBAUER
Attorneys for Defendant CALIFORNIA CRYOBANK LLC

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant California Cryobank LLC, certifies that this brief contains 5,945 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 26, 2025

CARLTON FIELDS, LLP

/s/ Mark A. Neubauer
MARK A. NEUBAUER
Attorneys for Defendant CALIFORNIA CRYOBANK LLC